IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARTHUR HOBLEY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | |
| | § | 3:09-CV-1160-K |
| YELLOW TRANSPORTATION, INC., et al, | § | |
| | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendant International Brotherhood of Teamsters Local 745's ("Local 745") Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 23), filed September 30, 2009, and (2) Defendant Yellow Transportation, Inc.'s ("Yellow") Motion to Compel Arbitration and Dismiss Litigation as to All Plaintiffs, Except Robert King (Doc. No. 28), filed October 15, 2009.  The Court **GRANTS** Yellow's motion and **DENIES** Local 745's motion.

## I.     Factual and Procedural Background

Plaintiffs Arthur Hobley, Dijon Wilson, Leron Trotter, and Keith Brockett worked as dock supervisors or senior dock supervisors for Yellow.  Plaintiff Ronald Elam worked as a line hall supervisor at Yellow.  All are African-American males with the exception of Brockett who is a white male.  Plaintiffs assert they were discriminated and retaliated against on account of their race or support of minority races.  In particular, Plaintiffs

- 1 -

allege that Yellow is a racially hostile work environment where African-American employees were subject to racially motivated threats, intimidation, and harassment including: verbal abuse, disparate compensation, racially offensive cartoons and drawings, threats of discharge, prominent displays of a hanging noose and effigy, and racially motivated pranks designed to humiliate and intimidate African-Americans and their supporters.

On June 19, 2009, Plaintiffs sued Defendant Yellow in federal district court. Plaintiffs assert violations of their civil rights under Title VII and 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981, as well as, for tortious interference with an existing contract. Yellow now moves to dismiss all Plaintiffs, except Robert King, in favor of arbitration. In support of its motion, Yellow points to an agreement to arbitrate signed by Plaintiffs (Trotter agreed based on continued employment after notification of the agreement to arbitrate).  The agreement provides:

> [B]oth Yellow and I agree to resolve all disputes, claims or controversies arising out of, or related to, my application for employment, my employment, or the cessation of my employment with Yellow that would otherwise require or allow resort to a court or other governmental tribunal ("Employment Claims") exclusively by final and binding arbitration before a neutral arbitrator.

(Def. App. at 00007, 00009, 00011, 00013, & Doc. No. 42-3).  Among the claims subject to arbitration are "claims of discrimination, harassment or retaliation . . . whether based on local, state or federal laws or regulations, or on tort, contract, or equitable law, or otherwise." (*Id.*). Plaintiffs counter that the agreement to arbitrate is

unenforceable because of an exclusion in the Federal Arbitration Act ("FAA") or because the agreement fails for indefiniteness.

## II.    Legal Standard

In deciding a motion to compel arbitration, the Court employs a two-part test: (1) a valid agreement to arbitrate must exist between the parties; and (2) the dispute in question must fall within the scope of that arbitration agreement.  *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001).  Under Texas law, whether a claim is subject to the arbitration clause depends on the factual allegations contained in the complaint, not the causes of action asserted.  *See Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998).  A claim is arbitrable if it is so interwoven with the underlying contract that it could not stand alone; however, it is not arbitrable if the claim is so independent of the contract that it can be maintained without reference to the contract.  *See id.*  This test seeks to insure that a claim "formally labeled a tort" is not in actuality "a breach of contract claim or based on a breach of contract."  *Id.*  The court must look to the facts forming the basis of each claim to determine whether it "could be maintained without reference to the contract," not simply whether it references the contract.  *Id.* at 251.

## III.    Analysis

Plaintiffs' main argument to avoid enforcement of the arbitration clause is that the FAA specifically carves out employment contracts relating to workers directly

involved in the interstate transportation of goods.  Yellow argues this exception does not apply to workers in Plaintiffs' positions.

Section One of the FAA excludes employment contracts for workers engaged in foreign or interstate commerce:

> "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1.  At first blush it appears Plaintiffs' positions as employees at a nationwide trucking company falls within the exception for employment contracts for workers engaged in foreign or interstate commere; however, the Fifth Circuit stated this exclusion is to be narrowly construed.  *Rojas v. TK Commc'n, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996).  The Fifth Circuit explains the phrase "workers engaged in foreign or interstate commerce" is restricted by the "two specific examples given, seamen and railroad employees."  *Id.* (quoting *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 601 (6th Cir. 1995).

Heeding the Fifth Circuit's instruction of narrowly construing this exception, dock supervisors, senior dock supervisors, and line hall supervisors at Yellow are not engaged in foreign or interstate commerce as defined by the FAA because they are not engaged in the movement of goods in the same way as seamen and railroad workers.  Nor are

- 4 -

these positions related closely enough with the transportation of goods in foreign or interstate commerce to fall within the exclusion.   Moreover, at least one court has specifically determined that dock supervisors at Yellow do not fall within Section One's exclusion.   *Wallace v. Yellow Transp., Inc.*, No. 5:05-CV-01213-T, slip op. at 4 (W.D. Okla. Aug. 8, 2006).   Considering that senior dock supervisors and line hall supervisors are another step removed from dock supervisors in regards to interstate commerce, it follows that these positions would not fall under the exception.   Thus, the Section One exclusion does not apply to Plaintiffs.

Plaintiffs' next argument is that the agreement fails for indefiniteness.   Yellow contends that virtually identical arbitration agreements have been analyzed and upheld. *Harris v. Yellow Transp., Inc.*, No. 3:08-CV-00884, slip op. (N.D. Tex. Oct. 1, 2008); *Redish v. Yellow Transp., Inc.*, No. 3-07-CV-1065, 2008 WL 2572658, *1 (N.D. Tex. June 24, 2008).   In *Redish*, the arbitration provision reads:

> [E]xcept for claims listed below as "Excluded Claims," both [defendant] and [plaintiff] agree to resolve all disputes, claims or controversies arising out of, or related to, [plaintiff's] application for employment, [his] employment, or the cessation of [his] employment with [defendant] that would otherwise require or allow resort to a court or other governmental tribunal ("Employment Claims") exclusively by final and binding arbitration before a neutral arbitrator.

*Redish*, 2008 WL 2572658, *1.   The arbitration provision Plaintiffs consented to in the present case is substantially similar in all respects to the arbitration agreement in *Redish*. Therefore, the first part of the test, whether a valid agreement to arbitrate exists, is met.

*See PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001).

Regarding the second part of the test, Plaintiffs do not make any argument as to whether the scope of the arbitration clause reaches the causes of action asserted in their Amended Complaint.  Consequently, the Court concludes that the claims in Plaintiffs' Amended Complaint are within the scope of the arbitration clause.  Furthermore, it appears that these claims clearly arise out the agreement and cannot stand alone, as the claims either require reference to the agreement as a legal matter or are based on a breach of the agreement.  *See Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998); *A & A Global Ind., Inc. v. Wolfe*, No. 3:01-CV-1515-D, 2001 WL 1343628, at *4 (N.D. Tex. Oct. 29, 2001)(Fitzwater, J.).  Thus, all Plaintiffs' claims are dismissed, except Robert King's, in favor of arbitration.

## IV.    Conclusion

Yellow's Motion to Compel Arbitration and Dismiss Litigation as to All Plaintiffs, Except Robert King is **GRANTED**.  Local 745's Motion to Dismiss Plaintiffs' First Amended Complaint is **DENIED**.

**SO ORDERED.**

Signed January 21st, 2010.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE